**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VITO L., | |
| Plaintiff, | |
| v. | Civil Action No. 25-17997 (RK) |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Vito L.'s[1] ("Vito" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") final decision, which partially denied Vito's request for Social Security disability insurance benefits.[2] (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In this appeal, the Court must answer the following question: does substantial evidence support Administrative Law Judge Kenneth Ayers's ("the ALJ" or "Judge Ayers") determination that Vito was not disabled prior to October 16, 2024?

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

[2] As explained hereinbelow, Defendant concluded that Vito was not disabled as of the disability onset date he alleged (September 1, 2022) but became disabled as of his fifty-fifth birthday (on October 16, 2024), i.e., upon becoming a "person of advanced age" under 20 C.F.R. § 404.1563.

### A. Procedural Posture

On August 8, 2023, Vito L. ("Vito" or "Plaintiff") filed an application for a period of disability and disability insurance benefits, alleging an onset date of September 1, 2022. (Administrative Record ("AR") at 100.)[3] At the time of the alleged onset date, Vito was an "individual closely approaching advanced age." (*Id.* at 25 (citing 20 C.F.R. § 404.1563).) The Social Security Administration (the "Administration") denied the request both initially, (*id.* at 121–25), and on reconsideration, (*id.* at 127–30). Thereafter, Vito requested a hearing before an ALJ. (*Id.* at 136–37.) On December 10, 2024, Vito, who was represented by counsel, and a vocational expert ("VE") testified at a hearing before Judge Ayers. (*Id.* at 35–58.) On January 30, 2025, Judge Ayers issued a written decision finding that Vito was not disabled prior to October 16, 2024, but became disabled on that date when he turned fifty-five years old. (*Id.* at 15–27.) After receiving notice of the partially unfavorable decision, Vito requested review by the Administration's Appeals Council. (*Id.* at 204–05.) On November 21, 2025, the Appeals Council determined that Vito had "not provide[d] a basis for changing the [ALJ's] decision" and denied Vito's request. (*Id.* at 1.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on January 24, 2026. (ECF No. 4.) Vito then filed his moving brief, ("Pl. Br.," ECF No. 5),[4] and the Commissioner filed an opposition ("Def. Opp.," ECF No. 7).

### B. Judge Ayers's Decision

On January 30, 2025, Judge Ayers issued a decision finding that Vito was not disabled prior

[3] The Administrative Record ("Record" or "AR") is docketed at ECF Nos. 4-1 through 4-14. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

[4] The Court construes Plaintiff's filing, styled as a "Motion for Judgment on the Pleadings," as Plaintiff's moving brief, consistent with this District's local practices, the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and the timing of the filing. (*See* ECF No. 8.) Because Plaintiff's brief does not contain internal pagination, the Court uses the page numbers in the CM/ECF header.

to October 16, 2024, but that he became disabled on that date—the date his age category changed—and continued to be disabled through the date of the decision.[5] (*See generally* AR at 15–27.) In reaching his determination that Vito was not disabled from the alleged onset date through October 16, 2024, but was disabled from October 16, 2024 onward, Judge Ayers applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). (*Id.* at 1–27.)

At Step One, Judge Ayers found that Vito had not engaged in substantial gainful activity since September 1, 2022, his alleged onset date. (*Id.* at 18 (citing 20 C.F.R. § 404.1571 et seq.).) At Step Two, Judge Ayers found that Vito suffers from four severe impairments: post-traumatic stress disorder ("PTSD"), an anxiety disorder, a depressive disorder, and a cervical and lumbar spine disorder. (*Id.* (citing 20 C.F.R. § 404.1520(c)).)[6]

At Step Three, Judge Ayers determined that, as of September 1, 2022, Vito did not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments (the "Listings"), set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As relevant here, Judge Ayers considered whether Vito's mental impairments, either "singly [or] in combination," met the criteria of Listings

---

[5] The Administration regulations provide that claimants between the ages of 50 and 54 are "[p]erson[s] closely approaching advanced age" and that claimants 55 years old and older are "[p]ersons of advanced age." 20 C.F.R. § 404.1563(d)–(e); *see id.* § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work."). Vito turned 55 on October 17, 2024. (*See* AR at 11, 25.)

[6] Judge Ayers also discussed Vito's non-severe impairments and provided adequate explanation as to why he found such impairments non-severe. (AR at 18 (citing AR at 1368–74) (finding that Vito's gastritis with acute complaints of dysphagia, gastroesophageal reflux disease without esophagitis, hyperlipidemia, hypertension, unspecified bradycardia, and mild mitral valve regurgitation were non-severe because they were "only acute or mild" and the record evidence "fail[ed] to document any significant limitations related to these impairments").) Judge Ayers further found that Vito's reported headaches and Crohn's disease were not medically determinable impairments because Vito treated his headaches with only over-the-counter Motrin and his Crohn's disease was noted to be asymptomatic. (*Id.* (citing AR at 629, 1280, 1282).)

12.04, 12.06, and 12.15—respectively, "depressive, bipolar and related disorders," "anxiety and obsessive-compulsive disorders," and "trauma- and stressor-related disorders."[7] (*Id*. at 19.) To answer that question, Judge Ayers assessed whether Vito's mental conditions satisfied the criteria set forth in "paragraph B" and "paragraph C" of each Listing. (*Id.*); *see* Listing § 12.00(A)(2) (explaining that, in order to satisfy Listing 12.04, 12.06, or 12.15, a claimant must satisfy the requirements of either paragraph B or C, which respectively relate to the functional limitations caused by the impairment and the seriousness and persistence of the impairment).

Beginning with paragraph B, Judge Ayers evaluated whether Vito's impairments resulted in "at least one extreme or two marked limitations" in the following areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) or adapting or managing oneself. (AR at 19–20.) A marked limitation means a serious limitation in a functioning category, and an extreme limitation is an inability to function in such category. (*Id.*) Judge Ayers first found Vito had a mild limitation in understanding, remembering, or applying information. (*Id.* at 19.) He cited Vito's Function Report, in which Vito did not report any limitations with understanding. (*Id*. (citing AR at 274–91).) Judge Ayers further noted that, although Vito "did report issues with his memory and with following instructions," his psychotherapist stated in treatment notes that Vito's memory "was only slightly impaired" and Vito "needed reminders at times and sometimes had difficulty remembering instructions." (*Id.* (citing AR at 274–91, 1154–85).) Regarding interacting with

[7] The Court notes that at Step Three, Judge Ayers also discussed Vito's spinal impairment and considered, but found inapplicable, Listings 1.15 and 1.16. (AR at 18–19.) The ALJ found no evidence of nerve root compromise or spinal stenosis with the requisite neurological signs established by imaging, nor any evidence that Vito medically requires an assistive device involving the use of both hands or is unable to use his upper extremities for fine and gross movements. (*Id.* at 19.) Judge Ayers adequately discussed his determination regarding Listings 1.15 and 1.16, and Vito does not challenge this aspect of Judge Ayers's opinion, so the Court focuses its review on how Judge Ayers evaluated Vito's mental impairments. *See Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

others, the ALJ found Vito had a moderate limitation. (*Id*. at 19.) The ALJ noted, *inter alia*, that Vito reported difficulty getting along with others, (*id.* (citing AR at 274–91)), and his therapist similarly reported that Vito had "difficulty extending himself socially," (*id.* (citing AR at 1154–85)). Regarding concentrating, persisting, or maintaining pace, the ALJ found Vito had a moderate limitation. (*Id.* at 19.) Despite reports of not sleeping well, which impacted Vito's ability focus, the record showed Vito was able to shop for groceries, care for himself, remember his medications, drive when necessary, and manage his checkbook and savings account. (*Id.* at 19–20 (citing AR at 274–91, 1376).) Lastly, the ALJ found that Vito experienced a moderate limitation in his ability to adapt or manage himself. (*Id.* at 20.) Judge Ayers noted that Vito stated that he does not cook for himself and that "his activities of daily living are limited," but also reported that he "has no difficulty with performing personal care," "keep[s] up with general dusting and laundry," "can driv[e] when necessary," and "is able to pay bills, handle a savings account, and use a checkbook." (*Id.* (citing AR at 274–91).)

Because Vito did not have at least one extreme or two marked limitations, Judge Ayers found the "paragraph B" criteria were not satisfied. (*Id.*) Judge Ayers also found that the "paragraph C" criteria were not satisfied because the record did not show that Vito's depression resulted in repeated episodes of decompensation or marginal adjustment, nor that his anxiety resulted in a complete inability to function independently outside the home, nor that his PTSD had been "serious and persistent despite treatment." (*Id.*)

As a precursor to Step Four, Judge Ayers concluded, based on a review of the evidence in the record, that Vito has the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 404.1567(b), but that any job he performs has to be limited in specified ways:

> [S]ince September 1, 2022, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

> except can occasionally reach overhead, bilaterally; can frequently climb ramps and stairs, occasionally climb ladders, ropes or scaffolds, occasionally stoop; can occasionally work at unprotected heights and around hazardous, moving mechanical parts; and can carry out simple instructions, never interact with the public, and tolerate no more than occasional changes in routine work setting.

(AR at 20.) As part of this determination, Judge Ayers considered Vito's subjective statements, the objective medical evidence and other medical evidence, and the medical opinions and prior administrative medical findings ("PAMFs") in the record. (*Id.* at 20–25.)

Judge Ayers began his RFC analysis by reviewing Vito's subjective testimony and function reports. (*Id.* at 20–22 (citing AR at 238–48, 274–91).) Vito "allege[d] disability due to severe anxiety and depression, a panic disorder, PTSD, Bruxism, and lumbar degenerative disc disease with radiculopathy."[8] (*Id.* at 21 (citing AR at 238–48).) In his function reports, Vito reported that he finds it difficult to be around people, gets angry very quickly, experiences road rage while driving, sleeps poorly due to nightmares, and is always tired and unable to focus. (*Id.* (citing AR at 274–91).) He reported spending most of his day lying around the house, leaving only for doctor's appointments and grocery shopping, and planning his driving routes to avoid traffic and people. (*Id.*) Vito also reported that he had sold his classic cars and lost interest in car shows and other activities, and that he has no tolerance for his siblings because they do not help him care for their mother. (*Id.*) He nonetheless reported no difficulty with personal care, no need for reminders to groom or take his medication, the ability to do general dusting and laundry (with help from his girlfriend "when she comes over"), and the ability to pay bills, count change, and handle a checking and savings account. (*Id.*) Vito's girlfriend completed a third-party function report describing

[8] The Court notes that Judge Ayers reviewed the evidence regarding Vito's physical impairments when determining Vito's RFC. Because Vito only challenges Judge Ayers's treatment of his mental impairments, particularly as it relates to his therapist's opinion, the Court does not here elaborate on Vito's physical impairments. *See Torres*, 2023 WL 6890851, at *2 n.3.

similar limitations; she reported, among other things, that she sees Vito "walking around and confused," prepares his food on the days she sees him, and usually drives him places due to his road rage. (*Id.* at 21–22 (citing AR at 266–73).)

At the hearing, Vito testified that he has a significant history of mental impairments and has undergone therapy and psychiatric treatment, including years of medication, but that he is "medication resistant." (*Id.* at 22.) He testified that he had recently tried a new form of treatment using magnetic fields to stimulate nerve cells in the brain, but showed no improvement after more than 30 sessions, and that his doctor had discussed electric shock therapy with him. (*Id.*) Vito testified that he stopped working at his last job because his medication made him drowsy and unable to concentrate. (*Id.*) He explained that his depression and anxiety began in 2017, when his father was in hospice, and progressively worsened, and that his father's deterioration gave him nightmares. (*Id.*) Vito testified that he spends his days lying on the couch, does not go out or talk to many people, and often receives assistance from others for household chores and cooking. (*Id.*) He described trips to Washington, D.C., and Mexico during which he did not leave the house or hotel room. (*Id.*) As to his physical impairments, Vito testified that he suffers from degenerative disc disease in his cervical spine; has had no surgery or injections; takes only Motrin for pain; experiences migraine headaches from his pain but takes no medication for them; can lift only about 10 pounds; and has trouble sitting in one place. (*Id.*)

Judge Ayers determined that Vito's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Vito's statements "concerning the intensity, persistence and limiting effects of these symptoms are not fully supported" by the record evidence (*Id.*) Judge Ayers explained that, although the record reflected severe physical and psychological impairments, those impairments "only limit [Vito] to the compromise range of light

exertional work" reflected in the RFC. (*Id.*) Judge Ayers then reviewed the medical evidence in the record in detail to explain his conclusion, starting with records from Garden State Heart Care dating back to 2022. (*Id.* at 22.) Those records, Judge Ayers explained, documented Vito's history of anxiety, PTSD, and depression with associated chest pain and shortness of breath, as well as traumatic stress arising from his role as caretaker for his father, who had mesothelioma. (*Id.* (citing AR at 463).) Vito was maintained on various psychotropic medications and generally denied side effects, although he reported in October 2022 feeling dizzy at night due to his medication. (*Id.* at 23 (citing AR at 359, 366, 368, 372, 376).) At that October 2022 visit, Vito was calm and cooperative and reported being nervous about his mother's ankle injury and rehabilitation stay, but also reported that when his mother is away, "he felt like he could breathe." (*Id.* (citing AR at 359).) In December 2022, after returning from Mexico, Vito's testing results and EKG were normal, and he was offered but declined a Xanax prescription. (*Id.* (citing AR at 435–37).) A repeat EKG in January 2023 was also normal. (*Id.* (citing AR at 425).)

Vito's psychotherapy notes throughout 2023 documented that he was upset over his father's death and his siblings' lack of help with his mother, that he continued to have nightmares, and that his therapist encouraged him to get out and socialize. (*Id.* (citing AR at 331–489).) In January 2023, for example, Vito rated his depression at 5/10 but reported worsening anxiety and anger, although he nonetheless presented with a full affect, no memory or concentration issues, and fair insight and judgment. (*Id.* (citing AR at 352–53).) The same complaints and findings were recorded from February through April 2023. (*Id.* (citing AR at 343–47).) From late May through July 2023, Vito reported daily depression and ongoing nightmares, but his thought process remained linear and goal directed, his memory and concentration were intact, and his insight and judgment were fair. (*Id.* (citing AR at 337–41).) Records from Central Jersey Family Medical in

August 2023 noted that he regularly followed up with psychology and psychiatry, and his December 2023 therapy records reflected the same complaints alongside largely normal mental status findings and medication compliance without side effects. (*Id.* (citing AR at 701, 929-30, 1188-90).)

In January 2024, Vito's therapist, Mr. Anthony Georges ("Mr. Georges"), wrote a letter on Vito's behalf stating that Vito had diagnoses of anxiety, PTSD, and depression; attended weekly psychotherapy sessions since February 2019; "respond[ed] well to therapeutic interventions and supportive counseling" and was "maintained on various psychotropic medications"; "ha[d] trouble extending himself socially at times"; and had "slightly impaired" memory. (*Id.* (citing AR at 1156–57).) Throughout 2024, Vito continued psychotherapy and "struggle[d] with witnessing his mother's deteriorating state." (*Id.*) Judge Ayers noted that, in August 2024, Vito "reported feeling overwhelmed with anxiety" but also reported plans to travel to Holland in September 2024 "to take a break from home and take care of himself and remain socially active." (*Id.* at 23–24 (citing AR at 1378).) In October 2024, while his mother was hospitalized, Vito reported ongoing nightmares and depression but presented as calm and cooperative with a linear and goal-directed thought process, intact memory and concentration, and fair insight and judgment. (*Id.* at 24 (citing AR at 1422–23).) Vito also reported that he was taking his medication at that time and denied any side effects. (*Id.*) Judge Ayers noted that, from late June 2024 through late October 2024, Vito underwent 28 treatments at the TMS Center of New Jersey (i.e., the treatment using magnetic fields about which Vito testified during the hearing) without any reported change in his symptoms. (*Id.* (citing AR at 1425–45); *see id.* at 40.) Vito's TMS Center technician told him it was "normal this early in the process" to not experience improvement. (*Id.* at 24.)

Judge Ayers next analyzed the medical opinions and PAMFs in the record and explained the persuasiveness of each. (*Id.* at 24–25.) For example, Judge Ayers found unpersuasive the PAMFs completed by state agency consultants at the initial and reconsideration levels. (*Id.* at 25 (citing AR at 100–07, 109–14).) He explained that, although the state agency consultants found that Vito had only non-severe physical and psychological impairments, the "entire record of evidence," including Vito's hearing testimony and medical records submitted after the PAMFs were completed, were "consistent with a finding that [Vito] has severe physical and psychological impairments which do limit him to a compromised range of light exertional work." (*Id.*) As relevant here, Judge Ayers also considered the opinion of Vito's therapist, Mr. Georges, which he found unpersuasive for the reasons explained hereinbelow. (*Id.* (citing AR at 564–71)); *see infra* Section III.A.

At Step Four, based on his assessment of the record and RFC determination, Judge Ayers concluded that Vito was unable to perform his past relevant work as an electrician apprentice—a skilled job that is generally performed as medium exertional work and that Vito performed at the heavy exertional level. (AR at 25 (citing 20 C.F.R. § 404.1565).) Judge Ayers further found that Vito was "an individual closely approaching advanced age" prior to October 16, 2024, when his age category changed to "an individual of advanced age." (*Id.* (citing 20 C.F.R. §§ 404.1563, 404.1564)); *see* 20 C.F.R. § 404.1563(a) (explaining that a claimant's age is considered "in combination with [his] residual functional capacity, education, and work experience" as part of the disability determination process). Judge Ayers concluded that, although "transferability of job skills [was] not material to the determination of disability" prior to October 16, 2024, beginning on that date Vito "has not been able to transfer job skills to other occupations." (AR at 26 (citing SSR 82-41, 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2)); *see* 20

C.F.R. § 404.1568(d)(4) (providing that, if a claimant is 55 years old or older and limited to light or sedentary work, the ALJ "will find that [the claimant] cannot make an adjustment to other work" unless the claimant has "transferable skills" as set out in the relevant Administration regulations).

Finally, at Step Five, Judge Ayers determined Vito's disability status both before and after October 16, 2024, when Vito turned 55 years old. (AR at 26–27.) For the period prior to that date, accounting for Vito's RFC, age, education,[9] and work experience, in conjunction with the VE's testimony, Judge Ayers concluded that Vito could perform other jobs that existed in significant numbers in the national economy. (*Id.* at 26 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Beginning on October 16, 2024, however, Judge Ayers found that Medical-Vocational Rule 202.06 directed a finding of "disabled" based on Vito's RFC, age, education, and work experience. (*Id.* at 27 (citing 20 C.F.R. §§ 404.1560(c), 404.1566).) Thus, Judge Ayers concluded that Vito was not disabled prior to October 16, 2024, but became disabled on that date and continued to be disabled through the date of the decision and beyond. (*Id.* (citing 20 C.F.R. § 404.1520(g)).)

This appeal concerns Judge Ayers's determination that Vito was not disabled from September 1, 2022 through October 15, 2024. Vito argues that Judge Ayers incorrectly evaluated the opinion of Vito's therapist, Mr. Anthony Georges, and failed to adequately develop the administrative record. (*See* Pl. Br. at 9–11.)

## II. <u>LEGAL STANDARD</u>

### A. STANDARD OF REVIEW

The Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's

---

[9] The highest level of education Vito completed was high school. (AR at 25, 240.)

final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 633 (3d Cir. 2010) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing *Smith*, 631 F.3d at 634).

## III. DISCUSSION

Vito appeals Judge Ayers's determination that he was not disabled from his alleged onset date of September 1, 2022 until October 16, 2024. (*See* ECF No. 1.) He raises two issues on appeal: first, that Judge Ayers erred by failing to afford "controlling weight" to the opinion of Vito's treating therapist under the so-called "treating physician rule," (Pl. Br. at 9–10), and second, that Judge Ayers failed to develop the record regarding Vito's non-exertional limitations, (*id.* at 10–11). The Commissioner responds that the treating physician rule does not apply to Vito's claim, that Vito's therapist would not qualify as a treating source even if it did, and that the record—which Vito's counsel represented was complete—was fully developed. (Def. Br. at 6–11.) Because "all other issues have been [forfeited]," the Court restricts its review to these arguments. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases). For the reasons explained below, the Court **AFFIRMS** the decision of the ALJ.

### A. MR. GEORGES' OPINION

Vito first argues that Judge Ayers erred in discounting the opinion of his long-time therapist, Anthony Georges, LCSW ("Mr. Georges"), who opined that Vito had "marked and extreme limitations in the ability to follow simple instructions, make simple work related decisions, sustain an ordinary work routine without special supervision, maintain attention for two hour segments," and other areas of mental functioning, and that Vito's psychological conditions "met the A, B and C criteria" of the relevant Listings. (Pl. Br. at 10 (citing AR at 564–71).) Invoking the so-called "treating physician rule," Vito contends that the therapist's treatment notes are "extensive," that Judge Ayers "failed to identify any records that are inconsistent with the therapist's opinion, most likely since there are none," and that Judge Ayers should have given "controlling weight" to Mr. Georges' opinion. (*Id.* at 9–10.)

Vito's argument fails at the threshold because it rests on a regulatory framework that does not govern his claim. The Third Circuit once applied the "treating physician rule" in Social Security appeals. "The rules for weighing physician opinions, however, were radically revised by 20 C.F.R. § 404.1520c, which not only gives no preferential treatment to the opinions of treating physicians, but also states that no specific evidentiary weight is given to opinions from any physician." *R.D. v. Comm'r of Soc. Sec.*, No. 22-3591, 2025 WL 2047241, at *1 (D.N.J. July 22, 2025). By its own terms, 20 C.F.R. § 404.1527—the regulation that codified the treating physician rule, and on which Vito relies—applies only to "claims filed . . . before March 27, 2017"; for "claims filed on or after March 27, 2017, the rules in § 404.1520c apply." 20 C.F.R. § 404.1527. It is undisputed that Vito protectively filed his application on August 8, 2023. (AR at 27.) Accordingly, the treating physician rule does not govern Vito's claim. Under the appropriate regulation, § 404.1520c, the Commissioner "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Judge Ayers correctly applied that standard.[10] (*See* AR at 20 (citing 20 C.F.R. § 404.1520c); *id.* at 24.)[11]

Even construing Vito as presenting a challenge under the governing regulations, the Court finds that Judge Ayers adequately considered Mr. Georges' opinion. Mr. Georges, a licensed clinical social worker, is a "medical source," 20 C.F.R. § 404.1502(d), and a statement from a medical source about what a claimant can still do despite his impairments is a "medical opinion" that the ALJ must consider, *id.* § 404.1513(a)(2); *see id.* § 404.1520c(a)–(b). The relevant question

---

[10] Even if the treating physician rule were to apply, Vito's argument would still fail. Under those regulations, only an "acceptable medical source" could qualify as a "treating source" whose opinion was eligible for controlling weight. *See* 20 C.F.R. § 404.1527(a)(2) (defining "treating source" as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"). Mr. Georges, a licensed clinical social worker and psychotherapist, (AR at 1157), does not meet the definition of an "acceptable medical source" under the prior regulations. *See* 20 C.F.R. § 404.1502(a) (listing acceptable medical sources); *Trump v. Colvin*, No. 14-920, 2015 WL 3842427, at *6 n.23 (M.D. Pa. June 22, 2015) ("A licensed clinical social worker is not an 'acceptable medical source' under [then-applicable] regulations of the Social Security Administration."); *Oliva v. Astrue*, No. 10-2616, 2011 WL 3862216, at *5–6 (E.D. Pa. Sept. 29, 2011) (explaining that psychotherapists were not considered "acceptable medical sources" but rather were "other sources" under prior regulations). The treating physician rule would thus not apply to Mr. Georges' opinion, and it would not have been entitled to controlling weight under any version of the regulations.

[11] For similar reasons, Vito's argument that Judge Ayers was required to "rely on two other opinions that Plaintiff was not disabled" in order to "reject[] the therapist's opinion" is without merit. (Pl. Br. at 10.) In support of that proposition, Vito relies on *Burns v. Colvin*, 156 F. Supp. 3d 579, 588–89 (M.D. Pa. 2016)—a Middle District of Pennsylvania case that applied the outdated treating physician rule and collected cases that did the same. Indeed, Vito specifically states that, "*under the treating physician rule*, 'the Third Circuit has only affirmed an ALJ who rejects a treating source medical opinion when there are two or more medical opinions that the claimant is not disabled.'" (Pl. Br. at 9–10 (emphasis added) (quoting *Burns*, 156 F. Supp. 3d at 588–89).) Even under the treating physician rule and in the cases *Burns* cited, the Third Circuit set forth no such prescription. *See Jones v. Sullivan*, 954 F.2d 125, 128–29 (3d Cir. 1991); *Plummer v. Apfel*, 186 F.3d 422, 430–31 (3d Cir. 1999); *Brown v. Astrue*, 649 F.3d 193, 196–97 (3d Cir. 2011); *see also Chung v. Comm'r of Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *4 (3d Cir. Apr. 9, 2025) ("[Plaintiff's] contrary authority concerns the quantum of evidence necessary to overcome a treating doctor's opinion under the pre-2017 'treating source' rule."). *Burns* is also inapposite: it concerned an ALJ who "reject[ed] all of the medical opinions in favor of [the ALJ's own] lay interpretation." *Burns*, 156 F. Supp. 3d at 589. Judge Ayers, by contrast, did not engage in impermissible lay evaluation of the medical evidence; he properly applied the § 1520c factors to determine the relative persuasiveness of the medical opinions in the record, as ALJs are required to do, and formulated an appropriate RFC based on the record evidence.

under § 404.1520c is not whether Judge Ayers should have given Mr. Georges' opinion "controlling weight," (Pl. Br. at 9), but whether Judge Ayers adequately evaluated the opinion's persuasiveness. The Court finds he did.

Under § 404.1520c, the ALJ assesses the persuasiveness of each medical opinion in light of several factors, the "most important" of which are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2); *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Supportability concerns how well the objective medical evidence and explanations presented by the medical source support the opinion; consistency concerns how well the opinion accords with the evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(1)–(2). The ALJ must "discuss the supportability and consistency factors when articulating [his] consideration of medical opinions and prior administrative medical findings in [his] opinion." *Timothy M. v. Comm'r of Soc. Sec.*, No. 24-4592, 2024 WL 4882704, at *4 (D.N.J. Nov. 25, 2024) (cleaned up) (citing *Lee Ann M. v. O'Malley,* No. 22-1104, 2024 WL 4184486 at *7 (D.N.J. Sept. 13, 2024)).

The RFC determination is the sole province of the ALJ, and that role cannot be assumed by any of the medical practitioners who evaluate a claimant. *See* 20 C.F.R. §§ 404.1546(c), 404.1520c; *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). The ALJ may elect to accept or reject a particular medical opinion as long as that decision is supported by proper reasons and an adequate explanation. *Cotter*, 642 F.2d at 704–05; *Sutherland v. Comm'r of Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (citing *Morales*, 225 F.3d at 317); *see also Nazario v. Comm'r of Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("[A]lthough the government may properly accept some parts of the medical evidence and reject other parts, the

government must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." (internal quotation marks omitted)). The ALJ need not "use particular language or adhere to a particular format in conducting his analysis," so long as there is "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Court "examine[s] the ALJ's conclusions as to a claimant's RFC with 'the deference required of the substantial evidence standard of review.'" *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)). That is, as long as the ALJ's decision supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion," it will be upheld. *Smith*, 631 F.3d at 633. Substantial evidence does not require highly detailed explanations; "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021).

Judge Ayers's evaluation of Mr. Georges' opinion satisfies these standards. Judge Ayers found the opinion unpersuasive for two reasons: first, "there are insufficient notes to document such overly broad and restrictive limitations in mental functioning"; and second, the "extreme and marked limitations are not consistent with the treatment records and the evidence in its entirety." (AR at 25.) The first reason speaks to supportability; the second, to consistency. Judge Ayers's discussion of the opinion is concise, but "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Judge Ayers's decision, "read as a whole," supplies ample record support for both conclusions. *Jones*, 364 F.3d at 505; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 504 (3d Cir. 2009) (stating that an ALJ "need not employ particular

'magic' words" or "adhere to a particular format" and need only provide a sufficient discussion of the evidence and explanation of reasoning to enable "meaningful judicial review").

Vito first argues that Mr. Georges' treatment notes are "extensive" and document his "chronic nightmares, difficulty sleeping, chronic anxiety, repeated panic attacks and difficulty swallowing due to his attacks." (Pl. Br. at 10 (citing AR at 544–56, 572–610).)[12] To the extent this is an argument addressed to the supportability of Mr. Georges' opinion, it is unavailing. For starters, Judge Ayers considered those reported symptoms throughout his decision, (AR at 20–24), and he considered Mr. Georges' own opinions that Vito "respond[ed] well to therapeutic interventions and supportive counseling," was "maintained on various psychotropic medications," had "trouble extending himself socially at times," and that Vito's memory was only "slightly impaired," (*id.* at 23 (citing AR at 1156–57); *see also id.* at 19). Judge Ayers reasonably concluded that such evidence did not support Mr. Georges' opinion that Vito was markedly or extremely limited in every area of mental functioning, including his ability to follow simple instructions. *See Jones*, 364 F.3d at 505. As shown above, Judge Ayers's RFC determination is supported by medical findings in the record, which document less severe limitations on Vito's mental functioning than those stated in Mr. Georges' opinion. When read as a whole, Judge Ayers's entire opinion enables this Court to discern his reasoning and reflects that substantial evidence supports his RFC determination.

---

[12] The Court notes that, in support of his argument about the contents of Mr. Georges' treatment records, Vito cites medical records from unrelated medical appointments with other practitioners, (AR at 544–56), followed by the entirety of Mr. Georges' treatment notes, (*id.* at 572–610). Vito does not point the Court to anything specific within the latter, which is about forty pages of treatment notes spanning two-and-a-half years. Nor does he counter Judge Ayers's finding that "there are insufficient notes to document such overly broad and restrictive limitations in mental functioning," (*id.* at 25), by simply citing treatment records that purportedly support the existence of certain symptoms, without any argumentation regarding the extent of limitations allegedly caused by those symptoms.

Moreover, contrary to Vito's assertion that Judge Ayers "failed to identify any records that are inconsistent with the therapist's opinion," (Pl. Br. at 10), Judge Ayers's decision catalogs numerous treatment records that are inconsistent with the marked and extreme limitations Mr. Georges assessed, as detailed *supra*. During an October 2022 appointment, for example, Vito was noted to be calm and cooperative and reported that, when his ill mother was away, "he felt like he could breathe." (AR at 23 (citing AR at 359).) Throughout 2022, Vito was "maintained on various psychotropic medications" and "denied any side effects." (AR at 22–23 (citing AR at 359, 366, 368, 372, 376).) In January 2023, Vito rated his depression as a five out of ten, his affect was full, "he had no issues with his memory or concentration," and his insight and judgment were fair—findings that were repeated in February, March, and April 2023. (AR at 23 (citing AR at 343–47, 352–53).) In May through July 2023, although Vito reported continuing nightmares and daily depression, his thought process was linear and goal directed, his memory and concentration were intact, and his insight and judgment were fair. (*Id.* (citing AR at 337–41).) In December 2023, Vito presented as calm and cooperative, reported that he was taking his medications without side effects, and again demonstrated linear and goal-directed thinking, no issues with memory or concentration, and fair insight and judgment. (*Id.* (citing AR at 929–30, 1188–90).) The same findings were recorded in October 2024. (*Id.* at 24 (citing AR at 1422–23).) The record also reflects that Vito traveled to Mexico in late 2022 and reported plans to travel to Holland in September 2024 to "take a break from home and take care of himself and remain socially active." (*Id.* at 23–24 (citing AR at 435–37, 1378).) Although Vito testified that he largely stayed indoors during his travels, (*id.* at 22), it was for Judge Ayers, not this Court, to weigh that testimony against the remainder of the record. *See Garland*, 593 U.S. at 368. These are precisely the "treatment records"

that Judge Ayers found inconsistent with Mr. Georges' opinion, (AR at 25), and the Court can readily trace his reasoning. *See Cotter*, 642 F.2d at 704–05.[13]

Vito contends that the records of his psychiatrist, Dr. Arkady Ganelin, MD, are "completely consistent with the notes of [Mr. Georges]." (Pl. Br. at 10 (citing AR at 337–406, 929–86).) However, consistency among treatment notes that document Vito's reported symptoms is not the same as consistency with the functional limitations set forth in Mr. Georges' opinion. *See supra* note 12. Vito cites only broad page ranges—seemingly the entirety of Dr. Ganelin's medical records—and does not identify any clinical finding that Judge Ayers overlooked or that is inconsistent with the mental status findings Judge Ayers discussed. At bottom, Vito asks the Court to re-weigh the evidence, which it may not do. *Chandler*, 667 F.3d at 359.

In sum, an ALJ's decision must be supported by substantial evidence and must include enough explanation that a reviewing court can trace the ALJ's reasoning. *See Martin*, 547 F. App'x at 160; *Garland*, 593 U.S. at 368; *Cotter*, 650 F.2d at 482. Nothing in § 404.1520c or in Third Circuit precedent requires an ALJ to give any opinion "controlling weight," to identify a contrary medical opinion before discounting one, or to find at least one medical opinion persuasive, so long

[13] Furthermore, Judge Ayers did not discount Vito's mental impairments wholesale. In fact, he found unpersuasive the PAMFs in which state agency consultants opined that Vito's psychological impairments were non-severe, explaining that additional evidence submitted after the stage agency's review, together with Vito's hearing testimony, established that Vito had severe impairments. (AR at 25.) Judge Ayers further found that Vito had moderate limitations in three of the four "paragraph B" areas of mental functioning, (*id.* at 19–20), and incorporated corresponding mental limitations into the RFC, restricting Vito to carrying out simple instructions, never interacting with the public, and tolerating no more than occasional changes in a routine work setting, (*id.* at 20). Judge Ayers charted a middle course—rejecting both the PAMFs and Mr. Georges' extreme limitations—which reflects exactly the weighing of evidence that the regulations contemplate. *See Chandler*, 667 F.3d at 361; *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). Moreover, to the extent Mr. Georges opined that Vito's conditions satisfied the Listings criteria, Judge Ayers separately explained his conclusions to the contrary with citations to the record, (AR at 19–20), and Vito does not challenge the ALJ's Step Three findings.

as the ALJ adequately explains his reasons. *See Chandler*, 667 F.3d at 361–62; *R.D.*, 2025 WL 2047241, at *1; *supra* note 11. Judge Ayers properly explained why he found both the PAMFs and Mr. Georges' opinion unpersuasive, and his reasons are supported by substantial evidence.

### B. Development of the Record

Finally, Vito contends that by rejecting the opinion of Plaintiff's treating therapist "without the benefit of any alternative opinion," Judge Ayers "failed to perform his duty to adequately develop the record [and] seek more evidence regarding Plaintiff's non-exertional limitations." (Pl. Br. at 11.) The Court disagrees.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, the burden of proving disability, and of furnishing the medical evidence necessary to do so, rests with the claimant. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). Moreover, "if there are no 'obvious gaps' in the administrative record, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Pearson v. Comm'r of Soc. Sec.*, No. 18-1137, 2020 WL 1248199, at *11 (D. Del. Mar. 16, 2020) (quoting *Johnson v. Colvin*, 2013 WL 4517857, at *12 (D.N.J. Aug. 23, 2013)), *aff'd*, 839 F. App'x 684 (3d Cir. 2020). Likewise, "[a]n ALJ . . . is not required to hunt in vain for medical records that a claimant's attorney represents do not exist." *Fox v. Comm'r of Soc. Sec.*, No. 19-4879, 2020 WL 1888251, at *6 (D.N.J. Apr. 16, 2020) (collecting cases).

The record in this case is comprehensive, including "regarding [Vito's] psychological impairments." (Pl. Br. at 11.) Judge Ayers had before him well over one thousand pages of medical evidence, including years of psychotherapy and psychiatric treatment records, (*see* Pl. Br. at 6 (collecting citations to AR at 337–406, 572–610, 929–86, 1156–85, 1187–1246, 1376–88, 1399–1424)), along with Mr. Georges' at-issue opinion, the state agency PAMFs, function reports from

Vito and his girlfriend, and Vito's hearing testimony, (AR at 21–25). Vito, who has been represented by counsel since before his initial application for disability benefits, made no objections to the evidence in the record, made no requests for further development, and affirmed that the record before the ALJ was complete. (*Id.* at 38–39, 119, 330.)[14]

Vito suggests that Judge Ayers *created* a gap in the record when he discounted Mr. Georges' opinion. (*See* Pl. Br. at 11.) This "misapplies" the concept of an "evidentiary gap." *Yolanda R. v. Comm'r of Soc. Sec.*, No. 23-3177, 2024 WL 4025988, at *6 n.8 (D.N.J. Sept. 3, 2024) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)); *see id.* ("The evidentiary record in the instant case includes extensive medical treatment records and objective medical evidence such that any claims of evidentiary gaps are not persuasive."); *Rosa*, 168 F.3d at 79 (finding "clear gaps" that ALJ should have "attempt[ed] to fill" where, *inter alia*, the record contained "sparse notes" reflecting nine visits with treating physician, despite claimant's testimony suggesting monthly treatment over many years, and where record evidence identified "a number of other physicians" whose records were not provided to the ALJ).

[14] Vito has been represented by counsel since June of 2023, even before his initial application for disability insurance benefits in August of 2023. (AR at 115–19, 208–09.) During the administrative hearing, when Judge Ayers asked whether any additional evidence was outstanding, Vito, through counsel, indicated an intent to submit certain recent medical records, and he was granted an additional week to do so. (*Id.* at 38–39.) Those records were timely submitted, and counsel affirmed that the record was thereafter complete. (*Id.* at 330, 1446–1923; *see also id.* at 24 (Judge Ayers citing and discussing portions of the later-submitted records in his decision).) "When an applicant for social security benefits is represented by counsel, the ALJ 'is entitled to assume that he is making his strongest case for benefits.'" *Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *8 n.9 (D.N.J. Apr. 5, 2019). Further, as the Commissioner points out, "Plaintiff, with the assistance of counsel, could have asked the ALJ to further develop the record with a consultative examination, but he did not." (Def. Br. at 7; *see* Pl. Br. at 11.) "[T]he ALJ retains the discretion, but not the duty, to order a consultative examination." *Byers v. Saul*, No. 19-12247, 2021 WL 870819, at *6 (D.N.J. Mar. 9, 2021) (collecting cases); *see Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002). Where, as here, the record is "sufficient for the ALJ to make a proper [disability] determination," the ALJ "act[s] within his discretion" by declining to order a consultative examination. *Haganey v. Comm'r of Soc. Sec.*, No. 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019).

Vito's position that Judge Ayers needed an "alternative opinion" after discounting Mr. Georges' is similarly mistaken. There is no requirement that the record contain a medical opinion that matches the ALJ's RFC, and "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362; *see Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) (rejecting the claimant's argument that the ALJ's decision was not supported by substantial evidence because the record contained no expert opinion indicating the claimant could perform light work and reasoning that the ALJ is responsible for determining the RFC and is not required to seek a separate expert medical opinion); *Jennifer R. v. Comm'r of Soc. Sec.*, No. 25-14242, 2026 WL 1906758, at *13 & n.13 (D.N.J. July 2, 2026).

Because Judge Ayers had before him an adequately developed record, reviewed well over one thousand pages of treatment records and other evidence, provided sufficient reasoning for finding the at-issue medical opinion unpersuasive, and supported his findings, including his RFC determination, with substantial evidence, the Court **AFFIRMS** the Commissioner's decision.

**CONCLUSION**

Having reviewed the record as a whole, the decision of the Commissioner is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 15, 2026